MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2016 ME 48
Docket:        Pen-15-82
Argued:        December 10, 2015
Decided:       March 31, 2016

Panel:         SAUFLEY, C.J., and MEAD, GORMAN, JABAR, and HJELM, JJ.

DARLING'S AUTO MALL

v.

GENERAL MOTORS LLC

MEAD, J.

[¶1]  Darling's Auto Mall (Darling's or Darling's Auto) appeals from a judgment entered by the Superior Court (Penobscot County, *Alexander, J.*) in favor of General Motors LLC following a jury trial on a small claims action.  On appeal, Darling's contends that the court (1) improperly granted a jury trial de novo; (2) erred in denying Darling's Auto's motion for judgment as a matter of law; and (3) committed prejudicial error by rejecting Darling's Auto's proposed jury instructions.  We affirm the judgment.

I.  BACKGROUND

[¶2]  Viewed in the light most favorable to the jury's verdict, the evidence in the record supports the following facts.  *State v. Diana*, 2014 ME 45, ¶ 2, 89 A.3d 132.  Darling's is a GM franchisee and authorized dealer in Ellsworth.  Pursuant to a Dealer Sales and Service Agreement between Darling's and GM,

2

Darling's performs warranty repairs on qualified GM vehicles and, in exchange, GM reimburses Darling's for the labor and parts in connection with the warranty repairs.

[¶3] Darling's, through the Dealer Sales and Service Agreement, is bound to perform warranty repairs in accordance with the provisions outlined in GM's Service Policies and Procedures Manual. In addition to the agreement, the franchise relationship is regulated by the Business Practices Between Motor Vehicle Manufacturers, Distributors and Dealers Act (Dealers Act), *see* 10 M.R.S. §§ 1171 to 1190-A (2015).[1] In the event of a conflict between the terms of an agreement and the Dealers Act, the Dealers Act controls. *See* 10 M.R.S. § 1178 ("Written or oral agreements between a manufacturer, wholesaler or distributor with a motor vehicle dealer including . . . policies and procedures agreements . . . servicing contracts, and all other such agreements . . . are subject to this chapter."); 10 M.R.S. § 1182 ("Any contract or part thereof or practice thereunder in violation of any provision of this chapter shall be deemed against public policy and shall be void and unenforceable.").

[¶4] On January 11, 2013, and on April 18, 2013, Darling's filed two small claims actions in District Court (Ellsworth). In both claims, Darling's alleged that

---

[1] Citations to the Dealers Act are to the statute currently in effect, 10 M.R.S. §§ 1171 to 1190-A (2015). The Dealers Act has been amended since this case was initiated in 2013, though not in any way that affects this appeal. *See, e.g.*, P.L. 2013, ch. 534, § 7 (effective Aug. 1, 2014).

it had been underpaid by GM for certain warranty repairs in violation of the Dealers Act—specifically the warranty reimbursement statute, 10 M.R.S. § 1176. The discrepancy between the price paid by GM and the price demanded by Darling's was based on differing interpretations of section 1176, which provides, in pertinent part:

> If a motor vehicle franchisor requires or permits a motor vehicle franchisee to perform labor or provide parts in satisfaction of a warranty created by the franchisor, the franchisor shall . . . *reimburse the franchisee for any parts so provided at the retail rate customarily charged by that franchisee* for the same parts when not provided in satisfaction of a warranty. . . . For purposes of this section, the retail rate customarily charged by the franchisee for parts may be established by submitting to the franchisor 100 sequential nonwarranty customer-paid service repair orders or 60 days of nonwarranty customer-paid service repair orders, whichever is less in terms of total cost, covering repairs made no more than 180 days before the submission and declaring the average percentage markup. The average percentage markup so declared is the retail rate . . . .

10 M.R.S. § 1176 (emphasis added). Thus, pursuant to the statute, GM, the franchisor, must reimburse Darling's, the franchisee, for parts at Darling's Auto's established markup rate. The parties do not dispute that Darling's has an established markup rate of 91.7% on its parts, but disagree about whether "core charges" need to be reimbursed at the 91.7% markup rate.

[¶5]  A core charge, also known as an exchange charge, is a type of deposit that a dealer pays to a manufacturer, in addition to the regular wholesale price, to buy a replacement part for use in a warranty repair. The amount of the core charge

is refunded to the dealer when the dealer returns the removed defective part to the manufacturer, who may then remanufacture the defective part. It is the usual industry practice, including at the Darling's dealerships, for invoices to list core charges separately from the part's retail price after applying the markup rate. Notably, Darling's nonwarranty customers do not actually pay the core charge; rather, customers are debited and simultaneously credited the core charge upon payment. Although the GM Service Policies and Procedures Manual unequivocally provides that core charges are not subject to markup for reimbursement purposes, Darling's contends that section 1176, which supersedes the terms of the contract in the event of a conflict, requires GM to pay a markup on core charges because the statute contains "no exceptions" for any component of a part's price.

[¶6] On April 18, 2013, and on July 31, 2013, the District Court (*Mallonee, J.*) found in favor of Darling's on both small claims, reasoning that "[i]n order to obtain a given part, [Darling's] has to pay both the nominal cost of the part and the designated core charge. The two together comprise one amount of dollars [Darling's] has to pay in order . . . to secure the part." The court's decision therefore required GM to reimburse Darling's for core charges at the 91.7% markup rate. GM appealed the decision as to both claims and requested a jury trial de novo pursuant to M.R.S.C.P. 11(d)(2).

[¶7]  On December 26, 2013, the court consolidated the two actions and granted GM's request for a jury trial de novo.  The court found that a jury trial was warranted because a genuine issue of material fact existed as to the "competing factual positions on what the price of the parts were as charged."  On January 7 and 8, 2015, the court (Penobscot County, *Alexander, J.*) held a jury trial.  At the conclusion of the trial, the court, over Darling's Auto's objection, instructed the jury, in pertinent part:

> Question number five: Did the price that Darling's paid for the part include or exclude the exchange charge—and that's also the core charge—you've heard the term exchange charge or core charge been used here again.  If you find that Darling's has proven it more likely than not, proven by a preponderance of the evidence, that the price that Darling's paid for the part included the exchange charge, answer that question include.  If you find they have not proven that by a preponderance of the evidence or that you in fact find that the price they paid excluded the exchange charge, you would answer that question exclude on that one.  So, if it is proven by a preponderance of the evidence that the price they paid for the part included the exchange charge, you would answer include.  If you find that is not proven by a preponderance of the evidence or if you find that in fact the price that Darling's paid excluded the exchange charge, you would answer that question exclude.

[¶8]  On January 8, 2015, the jury found that the price Darling's paid for the parts excluded the core charge and the court entered a judgment in favor of GM. On January 20, 2015, Darling's filed a motion for judgment as a matter of law pursuant to M.R. Civ. P. 50(b), contending that section 1176, by its plain terms,

6

does not provide an exception for core charges.  The court denied the motion on February 4, 2015, and Darling's timely appealed.

## II.  DISCUSSION

A.    Jury Trial De Novo

[¶9]  Maine Rule of Small Claim Procedure 11(d)(2) provides that

> [a] defendant who seeks a jury trial de novo shall briefly state the grounds of the appeal and demand a jury trial in writing on the notice of appeal and shall file with the notice an affidavit or affidavits meeting the requirements of Rule 56(e) of the Maine Rules of Civil Procedure, and setting forth specific facts showing that there is a genuine issue of material fact as to which there is a right to trial by jury.

Darling's contends that the court erred in granting a jury trial de novo because there was no dispute "that the price paid by Darling's is the total price shown on the invoice."  A court's decision to grant a jury trial de novo, however, is not an appealable determination.

[¶10]  We have observed that a trial court's decision to deny or grant a request for a jury trial de novo is very similar to a decision to grant or deny a motion for summary judgment.  *See Goodell v. Andy's Barn*, 518 A.2d 719, 720 (Me. 1986).  A court's decision denying a request for a jury trial de novo is akin to a decision granting a motion for summary judgment because both involve a determination that no genuine issue of material fact exists.  Conversely, a decision to grant a request for a jury trial de novo and a decision to deny a motion for

summary judgment each requires a determination that a genuine issue of material fact does exist. Thus, the grant of a jury trial de novo, like the denial of a motion for summary judgment, necessarily does not satisfy the final judgment rule because a factual question remains for future consideration by the court. Where, as here, the case has proceeded to a trial on the merits, the initial determination that a genuine issue of material fact exists is not appealable. *See Johnson v. Jones*, 515 U.S. 304, 313-20 (1995) (stating that an interlocutory appeal is not appropriate if taken from a court's determination that factual disputes remain); *Cheung v. Wu*, 2007 ME 22, ¶ 15, 919 A.2d 619 (stating that the denial of a motion for summary judgment is not appropriate for appellate review where the case has proceeded to a trial or hearing on the merits); *Estate of Galluzzo*, 615 A.2d 236, 238 (Me. 1992) (same); *see also Morgan v. Kooistra*, 2008 ME 26, ¶ 18, 941 A.2d 447 ("Because denials of motions for summary judgment are interlocutory, generally they are not immediately reviewable."). Instead, the issue that *is* subject to appeal is whether the ultimate verdict is supported by the evidence presented at trial. We now address that issue.

B.     Denial of Motion for Judgment as a Matter of Law

[¶11]  "We review the denial of a motion for judgment as a matter of law de novo to determine if any reasonable view of the evidence and those inferences that are justifiably drawn from that evidence supports the jury verdict." *Russell v.*

8

*ExpressJet Airlines, Inc.*, 2011 ME 123, ¶ 10, 32 A.3d 1030 (quotation marks omitted).

[¶12]  We reject Darling's Auto's argument that, as a matter of law, it is entitled to have the core charge included in the 91.7% markup.  Section 1176 provides that "the franchisor shall . . . reimburse the franchisee for any parts so provided at the retail rate customarily charged by [the] franchisee for the same parts."   10 M.R.S. § 1176.   Core charges are not explicitly addressed by section 1176 and, contrary to Darling's Auto's contention, are not necessarily encompassed by the statute's general directive to "reimburse . . . for any parts." Because the statute is silent on the matter, this issue could not be resolved without making two factual determinations: exactly how core charges factor into the price paid (if they do at all) and how both the parties and industry treat these charges.

[¶13]   Based on the evidence and the reasonable inferences drawn therefrom, the jury could have reasonably found that the price paid for the parts excluded the core charge.  The exhibits at trial established that Darling's does not in actuality charge its nonwarranty customers a markup on core charges when it sells parts; instead, customers are debited and simultaneously credited the core charge upon payment.  Although Darling's has ostensibly paid core charges to procure new parts, the jury heard evidence that those amounts were automatically and consistently refunded by GM once the defective part was returned to GM for

remanufacturing purposes, thereby making the core charge and its associated refund, in essence, a zero-sum transaction. Thus, there was sufficient evidence for the jury to reasonably find that the price paid for the parts excluded the core charge.

C.    Jury Instructions

[¶14]  "We review jury instructions as a whole for prejudicial error, and to ensure that they informed the jury correctly and fairly in all necessary respects of the governing law." *State v. Tucker*, 2015 ME 68, ¶ 11, 117 A.3d 595 (quotation marks omitted).  In addition, "[w]e will vacate a judgment based on a denied request for a jury instruction if the appellant demonstrates that the requested instruction (1) stated the law correctly; (2) was generated by the evidence; (3) was not misleading or confusing; and (4) was not sufficiently covered in the instructions the court gave." *State v. Hanaman*, 2012 ME 40, ¶ 16, 38 A.3d 1278. "[T]he court's refusal to give the requested instruction must have been prejudicial to the requesting party." *Id.*

[¶15]  Darling's contends that the jury instructions used were in error because they did not reference the warranty reimbursement statute, 10 M.R.S. § 1176, and thus prevented the jury from determining whether the statute requires a markup on the core charge.  Contrary to Darling's Auto's contention, the court did not err in refusing to instruct the jury on the warranty

reimbursement statute because doing so would have erroneously invited the jury to engage in statutory interpretation, which, as we have made clear, "is a task for the courts, not for juries." *Sunshine v. Brett*, 2014 ME 146, ¶ 15 n.9, 106 A.3d 1123. Darling's Auto's proposed instructions must fail, as they improperly dwelled on the warranty reimbursement statute and its legislative history, and, in addition, were highly argumentative, lengthy, and likely to confuse the jury. The court properly rejected Darling's Auto's proposed instructions.

The entry is:

Judgment affirmed.

---

**On the briefs:**

Judy A.S. Metcalf, Esq., Eaton Peabody, Brunswick, for appellant Darling's Auto Mall

Joshua A. Randlett, Esq., Richardson, Whitman, Large & Badger, Bangor, for appellee General Motors LLC

**At oral argument:**

Judy A.S. Metcalf, Esq., for appellant Darling's Auto Mall

Frederick J. Badger Jr., Richardson, Whitman, Large & Badger, Bangor, for appellee General Motors LLC