STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-18-476

MAINE LIFE CARE RETIREMENT
COMMUNITY, INC.,

Plaintiff

v.

ORDER

TOWN OF SCARBOROUGH, et al.,

Defendant

REC'D CUMB CLERKS OF(
FEB 20 '20 AM8:47

In this action plaintiff Maine Life Care Retirement Community Inc., which operates a continuing care retirement community known as Piper Shores in Scarborough, is seeking a declaratory judgment that its property is exempt from taxation because it qualifies as a charitable institution within the meaning of 36 M.R.S. § 652(1).

Before the court are a motion for summary judgment by Maine Life Care Retirement Community Inc. (hereafter "Maine Life Care" or "Piper Shores") and a cross-motion for summary judgment by defendants Town of Scarborough and Town Assessor David Bouffard (collectively, the Town).

Summary Judgment

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In considering a motion for summary judgment, the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. *E.g., Mahar v. StoneWood Transport,* 2003 ME 63 ¶ 8, 823 A.2d 540. The facts must be considered in the light most favorable to the

**Plaintiff-Sally Daggett, Esq.**
**Defendants-Eben Albert, Esq. and**
**N Joel Moser, Esq.**

non-moving party. *Id.* Thus, for purposes of summary judgment, any factual disputes must be resolved against the movant. Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. *Kenny v. Department of Human Services,* 1999 ME 158 ¶ 3, 740 A.2d 560.

In this case the majority of each party's factual assertions are undisputed. Thus the Town has admitted 41 out of the 62 factual assertions in the August 19, 2019 statement of material facts filed by Piper Shores ("Piper Shores SMF"), and all of the remaining assertions have been qualified rather than denied. Similarly, Piper Shores has admitted 61 of the 73 factual assertions in the Town's August 30, 2019 statement of material facts ("Town SMF') and has also qualified rather than denied the remainder.

Only a few of the qualifications raise disputed issues. Even in those few instances where there are potentially disputed factual issues, the court does not find those disputes are material. A factual dispute is only material if it would potentially affect the outcome of the case. *Holmes v. Eastern Maine Medical Center,* 2019 ME 84 ¶ 15, 208 A.3d 792.

Undisputed Facts

Maine Life Care Retirement Community Inc. is a nonprofit Maine corporation that qualifies for tax exempt status under the Internal Revenue Code. The continuing care retirement community that it operates, Piper Shores, occupies approximately 140 acres on Piper Road in Scarborough. It provides its residents with 200 independent living units in 160 apartments and 40 cottages. It also includes 50 assisted living and memory care units and 40 skilled nursing care units.

2

The assisted living units are licensed as a nonprofit residential care facility by DHHS pursuant to 22 M.R.S. § 7801. The skilled nursing care units are licensed as a nonprofit nursing home by DHHS pursuant to 22 M.R.S. § 1817.

In addition, Piper Shores has obtained a certificate of authority from the Maine Bureau of Insurance to operate as a "continuing care retirement community" pursuant to 24-A M.R.S. § 6202(3)(B), which subjects institutions offering continuing care  agreements to various consumer protection provisions enforced by the Bureau of Insurance and set forth in chapter 73 of Title 24-A.

Residents of Piper Shores pay a one-time entrance fee upon admission and thereafter pay continuing monthly fees. Both the entrance fee and the monthly fees are set without regard to the residents' ability to pay. Town SMF ¶ 31 (admitted).

The entrance fee consists of a residential component, which depends on the type of unit to be occupied, and a fixed $30,000 per person life care component.  There are two options for payment of the entrance fee, referred to as a 90% refundable option and an amortizing balance option. Under the 90% option the entrance fee is refundable in varying amounts depending on how much time the resident has occupied the unit.  Town SMF ¶ 46 (admitted). Under the amortizing option a lower entrance fee is charged but the refundable option reduces to zero over the first 50 months of residency. Town SMF ¶ 47 (admitted).

As of 2019, entrance fees for independent living apartments under the 90% option ranged from $230,400 for a studio to $809,700 for a two-bedroom with den. Of the 160 independent living units, 6 are studios, 73 are one-bedroom apartments (with and without dens) and 81 are two

3

bedrooms apartments (with and without dens). As of 2019, the entrance fees for cottages ranged from $573,000 to $872,400. All of the cottages have two bedrooms.[1]

As of 2019 the monthly fees for independent living apartments ranged from $2,149 per month for a studio occupied by one person to $7,481 per month for a two person apartment with den occupied by two people. The monthly fees for cottages ranged from $4,387 to $4,977 per month for a single person and $5,390 to $5,980 per month for two persons. Town SMF ¶¶ 39-42.

Under its Residency Agreement Piper Shores may raise the monthly fees charged to residents once per year after consultation with the Residents' Association and after making the information upon which any increase is based available to all residents. Residency Agreement § 5.3.2, cited in Town SMF ¶ 43.

In an amendment to its Residency Agreement, Piper Shores states that "except as waived by us after full disclosure, we require that all residents must be capable of independent living, with or without reasonable accommodation or reasonable modification, upon assuming residency at Piper Shores." Town SMF ¶ 34.[2] Thereafter Piper Shores generally guarantees that, if residents' health care needs change after admission, the residents can move to an assisted living or skilled nursing care unit as needed and pay the same monthly fee as they paid in their independent living unit. Piper Shores SMF ¶ 7.[3]

---

[1] Town SMF ¶¶ 37-38, 68-69 (admitted). The entrance fees under the amortized balance option ranged from $160,200 for a studio to $536,800 for a two bedroom apartment with den and from $383,000 to $577,400 for cottages. *Id.* ¶¶ 70-71. In all cases those entrance fees are for a single resident. For a second resident an additional $30,000 life care fee is added to the entrance fee.

[2] Piper Shores qualifies Town SMF ¶ 34, but the quoted statement appears as written in the Amendment to the Residency Agreement cited by the Town in that paragraph.

[3] The Town has qualified Piper Shores SMF ¶ 7, but the qualification does not relate to the fact recited above. There may be an additional cost for residents with certain pre-existing conditions. *See* Exhibit A to Albert Affidavit, referred to in the Town's SMF ¶ 34 and in the qualification of that paragraph by Piper Shores.

4

Although Piper Shores does not subsidize the entrance fee for any resident and sets its entrance and monthly fees without regard to residents' ability to pay, it has established a benevolence policy which provides that it does not intend terminate any residency by reason of a resident's inability to pay monthly fees, as set forth in its Residency Agreement:

> It is the intent and policy of Sponsor [Maine Life Care] to operate as a not-for-profit corporation and not to terminate the residency of Resident solely by reason of the financial inability of Resident to pay the Total Monthly Fee. When Resident establishes facts to justify the need for financial assistance as determined by Sponsor in its reasonable judgment, Sponsor shall advance funds to help Resident pay his or her Monthly Fee. Such advances, plus interest at the prime rate or base rate of T.D. Banknorth N.A. or its successor, shall be charged against the repayable portion of Resident's Entrance Fee. In the case where such advances exceed the amount of Resident's Entrance Fee Repayment . . . , Sponsor will waive some or all of the Resident's Monthly Fee; provided, however, that Resident has not intentionally depleted assets needed to pay his or her Monthly Fee. In accordance with the terms of any applicable guaranty agreement, Sponsor will first look to Resident's Guarantor for payment of any charges owed to Sponsor before advancing any funds to the Resident.

Piper Shores SMF ¶ 38 (admitted). The benevolence policy therefore applies after unpaid amounts are charged against the repayable portion of a resident's entrance fee and after recourse has been sought from any guarantor.

In 2016 Piper Shores provided 2 residents with reductions or write-offs of monthly fees in a total amount of $63,042.00. In that same year Piper Shores had total monthly fee revenue of $13,154,003.00. Town SMF ¶¶ 57-58 (admitted).

Piper Shores advertises various "world class" amenities on its website, stating that many of its independent living apartments have "full ocean views," that it offers several "fine dining" options, and that it has, among other things, a full fitness center and pool, seaside walking trails,

5

a convenience store, a bank, a woodworking shop, and gardening facilities. *See* Town SMF ¶¶ 52-56.

In 1997, in conjunction with the submission and approval of a contract zoning amendment allowing the construction of the Piper Shores project, Maine Life Care on behalf of Piper Shores entered into an agreement with the Town with respect to the payment of property taxes. That agreement provided in pertinent part:

> Maine Life Care agrees for itself, its assigns and successors in interest in the Property, that the proposed 160 independent living units or apartments and the 40 cottages and related common areas (hereinafter the "Taxable Property") will be fully taxable under current Maine property tax laws, and not exempt from, taxation under 36 M.R.S.A. § 652. If, as a result of a change in the law or otherwise, the Taxable Property is subsequently determined to be exempt in whole or in part from taxation under Maine property tax laws or entitled to be taxed at a rate less than the property tax imposed on other property owners in the Town, Maine Life Care, its successors and assigns shall pay to the Town annually, at the same time property taxes are due, an amount equivalent to 100% of the property taxes that would be imposed on the Taxable Property if the same were fully taxable, less any amounts of property taxes actually paid. Such payments shall be subject to the same interest charges and penalties for late payment or non-payment as are applicable under Maine law for non-payment of property taxes and Maine Life Care shall have the same rights to dispute valuations and seek abatements as if such payments were assessed as property taxes.

Piper Shores SMF ¶ 43.

This has given rise to a factual dispute between the parties. The Town contends this agreement constitutes an admission that a major portion of Piper Shores is not exempt from property tax.[4] Piper Shores points out that the agreement only speaks to the 160 independent living units and 40 cottages and related common areas – not the entire project – and argues that it

---

[4] It has also offered evidence in the form of minutes from a Town Council meeting in November 1997 reporting that a representative of Maine Life Care stated that Maine Life Care would pay taxes on all of the property and not contest at that time the exempt status of any portion of the project. Town SMF ¶ 73.

constitutes an agreement to pay property tax on those 160 units, 40 cottages, and related common areas regardless of whether those areas or the Piper Shores property as a whole would otherwise qualify as exempt. At least for purposes of summary judgment, the court accepts the position espoused by Piper Shores.

Since 1997 the Town has assessed – and Piper Shores has paid – property taxes on all of the Piper Shores property. According to the affidavit of James Adamowicz, CEO of Maine Life Care, the addition of 30 assisted living and memory care units in 2017 resulted in an increase in the property tax assessed against Piper Shores. At that point the new management team at Piper Shores reviewed its assessments and discovered that it had been paying taxes on the entirety of its property, not just on the 160 assisted living units, the 40 cottages, and the related common areas. Piper Shores SMF ¶¶ 50-52.

Thereafter Piper Shores applied for exemption for the portions of its property other than the 160 independent living units, the 40 cottages, and the related common areas expressly covered by the 1997 agreement. The Assessor did not formally act to grant or deny those exemption applications, and Piper Shores then commenced this action.

Tax Exemption for Charitable Property

The governing statute is 36 M.R.S. § 652(1)(A), which provides in pertinent part:

> The real estate and personal property owned and occupied or used solely for their own purposes by benevolent and charitable institutions incorporated in this State are exempt from taxation. Such an institution may not be deprived of the right of exemption by reason of the source from which the funds are derived or by reason of limitation in the classes of persons for whose benefit the funds are applied.

7

A further condition for charitable tax exemption is that any corporation claiming such an exemption "must be organized and conducted exclusively for benevolent and charitable purposes." 36 M.R.S. § 652(1)(C)(1) (emphasis added).

Certain organizations are expressly designated in the statute as benevolent and charitable institutions. Thus section 652(1)(A) expressly states that the term " 'benevolent and charitable institutions' includes, but is not limited to" nonprofit nursing homes licensed by DHHS, nonprofit residential care facilities licensed by DHHS, nonprofit community mental health service facilities licensed by DHHS, and nonprofit child care centers. What this means is that if Piper Shores consisted solely of its skilled nursing care units and its assisted living units, which have been separately licensed by DHHS as a nursing home and a residential care facility respectively, it would be tax exempt.

However, continuing care retirement communities are not expressly designated as exempt. Moreover, the Law Court has ruled that a property cannot, under 36 M.R.S. § 652(1), be partially exempt. If the entire property is not being used "solely" for charitable purposes, it is not exempt. *City of Lewiston v. Marcotte Congregate Housing Inc.,* 673 A.2d 209, 212 (Me. 1996). Therefore, to prevail in this action, Piper Shores must demonstrate that, as a whole, it is a charitable institution whose activities are conducted exclusively for charitable purposes.

As the court understands it, Piper Shores is not trying to avoid or escape its 1997 agreement to pay property tax on the independent living apartments and cottages and related common areas. Instead, Piper Shores is arguing that it would otherwise qualify as tax exempt and is therefore

8

legally entitled to an exemption on the portions of its property that are not subject to the 1997 Agreement.[5]

As a general rule, all real property is subject to taxation. *Francis Small Heritage Trust Inc. v. Town of Limington,* 2014 ME 102 ¶ 12, 98 A.3d 1012. The Law Court has repeatedly ruled that because taxation is the rule and exemption the exception, exemptions from taxation must be strictly construed and the burden is on an organization seeking exemption to prove that it comes "unmistakably within the spirit and intent of the act creating the exemption." *E.g., Francis Small Heritage Trust Inc. v. Town of Limington,* 2014 ME 102 ¶ 13; *Credit Counseling Centers Inc. v. South Portland,* 2003 ME 2 ¶ 26, 814 A.2d 458; *Episcopal Camp Foundation v. Town of Hope,* 666 A.2d 108, 110 (Me. 1995).[6]

The above language comes originally from the decision in *City of Bangor v. Rising Virtue Lodge,* 73 Me. 428, 433 (1882), in which the Law Court further stated:

> The just and honest rule in assessments for governmental purposes is equality in taxation . . . . If one bears less than his share of the public burden, some other must bear more . . . . The more numerous the exemptions, the more unequal and burdensome the taxation.

---

[5] Left for another day, if Piper Shores were to prevail in this action, would be the question of determining exactly what portion of its property would be subject to tax under the 1997 Agreement. In particular, whether "related common areas" would be construed narrowly or whether that term would include the seaside walking trails, the woodworking shop, and other Piper Shores amenities. In this connection, the Town points out that the indoor pool (open to all residents of Piper Shores) and covered parking area (for which residents of Piper Shores pay extra) are both located in the same building that houses the assisted living and skilled nursing care units. As a result, portions of that building are used by the residents of the independent living apartments and cottages and could potentially be the subject of dispute as to their status as common areas.

[6] Despite the "unmistakably" language, it appears that Piper Shores need only prove its entitlement to an exemption by a preponderance of the evidence. *See Town of Poland v. Poland Spring Health Inst.,* 649 A.2d 1098, 1100 (Me. 1994) ("We find no authority . . . to support [the] contention that a preponderance of the evidence is not the proper standard of proof to be applied by the trial court in its determination of whether in fact the Institute's property is exempt from tax pursuant to section 652"). The court therefore construes the "unmistakably" language as emphasizing that exemptions from taxation, including the charitable exemption in § 652(1)(A), must be strictly construed.

9

73 Me. at 432.

In construing the exemption in section 652(1)(A) for property owned by benevolent and charitable institutions and used solely for their own purposes, the term "benevolent" is synonymous with "charitable." *Christian Fellowship and Renewal Center v. Town of Limington,* 2006 ME 44 ¶ 13, 896 A.2d 287; *Maine AFL-CIO Housing Development Corp. v. Town of Madawaska,* 523 A.2d 581, 584 (Me. 1987). In determining whether an institution is "charitable," the Law Court has looked to the definition of charity in *Johnson v. South Blue Hill Cemetery Association,* 221 A.2d 280, 287 (Me. 1966):

> A charity in the legal sense may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government.

*See Francis Small Heritage Trust Inc. v. Town of Limington,* 2014 ME 102 ¶ 14; *Christian Fellowship and Renewal Center v. Town of Limington,* 2006 ME 44 ¶ 13; *Episcopal Camp Foundation v. Town of Hope,* 666 A.2d at 110.[7]

In considering whether an organization is charitable and is using its property solely for charitable purposes, the Law Court has directed its attention both to the stated purpose of the organization and the facts related to the activities conducted by the organization. *Christian Fellowship and Renewal Center v. Town of Limington,* 2006 ME 44 ¶ 16.

The Court has also stated that in cases where the charitable exemption is claimed,

---

[7] In the more recent cases the Law Court has omitted the first part of the *Johnson* quotation describing a charity as a "gift," instead beginning the quote with "for the benefit of."

> There must be a careful examination to determine whether in fact the institution is organized and conducting its operation for purely benevolent and charitable purposes in good faith, whether there is any profit motive revealed or concealed, whether there is any pretense to avoid taxation, and whether any production of revenue is purely incidental to a dominant purpose which is benevolent and charitable.

*Francis Small Heritage Trust Inc. v. Town of Limington,* 2014 ME 102 ¶ 13, quoting *Christian Fellowship and Renewal Center v. Town of Limington,* 2006 ME 44 ¶ 17, and *Green Acre Baha'i Institute v. Town of Eliot,* 150 Me. 350, 353, 110 A.2d 581 (1954).

This case turns on whether Piper Shores is organized and conducting its operation exclusively for purely benevolent and charitable purposes. 36 M.R.S. § 652(1)(C)(1). In that connection, the fact that Piper Shores is a nonprofit corporation that qualifies for tax exemption under the Internal Revenue Code is not dispositive. Other nonprofit and tax exempt organizations have sought and been denied tax exemption because their activities were not conducted exclusively for charitable purposes. *E.g., Credit Counseling Centers Inc. v. South Portland,* 2003 ME 2 ¶¶ 2, 17; *City of Lewiston v. Marcotte Congregate Housing Inc.,* 673 A.2d at 210.

As the Town points out, courts in other jurisdictions have denied charitable exemptions to nonprofit continuing care retirement communities similar to Piper Shores. *See Western Massachusetts Lifecare Corp. v. Board of Assessors,* 747 N.E.2d 97, 104-05 (Mass. 2001); *El Castillo Retirement Residences v. Martinez,* 401 P.3d 751, 760-61 (N.M. 2017); *Michigan Baptist Homes & Development Co. v. City of Ann Arbor,* 242 N.W.2d 749, 753-54 (Mich. 1976); *In re Appeal of Dunwoody Village,* 52 A.3d 408, 416 (Pa. Comm'w Ct. 2012); *Franciscan Communities, Inc. v. Hamer,* 975 N.E.2d 733, 737, 752 (Ill. App. Ct. 2012).

Those decisions involve the specific legal requirements for charitable exemption in the respective jurisdictions in question, which differ to some extent from the eligibility for tax

11

exemption in Maine. However, all of those decisions primarily base the denial of exemption on the existence of entrance fees and on continuing monthly fees which, like those of Pier Shores, limit admittance to elderly persons who are affluent enough to pay. Indeed, many of the entrance and monthly fees at issue in those cases were lower than the entrance and monthly fees charged at Piper Shores, even adjusted for inflation. *See, e.g., Western Massachusetts Lifecare Corp. v. Board of Assessors,* 747 N.E.2d at 101 (entrance fees ranging from $100,200 to $290,200 and monthly fees ranging from $1,325 to $2,050 in 2000).

In response to the argument that Piper Shores does not qualify for a charitable exemption because it derives its income from and provides its benefits to an affluent population of elderly persons who at the time of admission are capable of independent living, Piper Shores points to the following language in section 652(1)(A):

> Such an institution may not be deprived of the right of exemption by reason of the source from which its funds are derived or by reason of the limitation in the classes of persons for whose benefit the funds are applied.

This begs the question, however, because the above language applies only to "such an institution" – in other words, an institution that otherwise qualifies as a benevolent and charitable institution.

For several reasons, the court concludes that based on the undisputed facts contained in the summary judgment record Piper Shores does not qualify as a benevolent and charitable institution. First, although not dispositive, one of the issues to be considered in determining whether an institution is charitable is whether it provides a service or benefit that would "otherwise [lessen] the burdens of government." *Christian Fellowship and Renewal Center v. Town of Limington,* 2006 ME 44 ¶ 24, quoting *Johnson v. South Blue Hill Cemetery Association,* 221 A.2d at 287. The existence of a continuing care retirement community offering "world-class amenities" for persons

12

able to afford entrance fees ranging from \$160,200[8] to \$872,400 and monthly fees ranging from \$2,149 to \$7,481 cannot be found to "lessen the burdens of government in any appreciable way." *Western Massachusetts Lifecare Corp. v. Board of Assessors,* 747 N.E.2d at 105.

Second, in considering whether a charitable organization is being operated "for the benefit of an indefinite number of persons," *Johnson v. South Blue Hill Cemetery Association,* 221 A.2d at 287, courts have looked to whether the potential class of persons served is drawn from all walks of life. Section 652(1)(A) permits limitations in the classes of persons benefited by a charitable organization, but a limitation to persons with substantial assets undercuts the basic concept of charity.

Third, the fundamental attribute of a charitable organization is that it provides a benefit or service to a significant number of its beneficiaries for free, below cost, or below market rates.[9] Thus, although the Law Court has confirmed the charitable status of various organizations that charge fees, it has done so in cases where the benefits were being provided to persons of low income or where the fees were nominal, below market rate, or were excused for persons who were not able to pay. *See, e.g., Christian Fellowship and Renewal Center v. Town of Limington,* 2006 ME 44 ¶ 11 (nominal fees excused for persons who could not afford to pay them); *City of Lewiston v. Salvation Army,* 1998 ME 98 ¶ 4, 710 A.2d 914 (clothing store serving low income community selling donated clothes below market prices); *Episcopal Camp Foundation Inc. v. Town of Hope,* 666 A.2d at 110 (stating that the "inquiry in this case is whether . . . providing children with the opportunity to attend summer camp <u>below cost</u> is a charitable and benevolent purpose") (emphasis

---

[8] This is the lowest possible entrance fee, applicable to the amortizable balance option for a single person seeking admission to one of the 6 studios.

[9] This is consistent with the original description of "charity" in *Johnson v. South Blue Hill Cemetery Association,* 221 A.2d at 287, as involving a "gift."

13

added); *Maine AFL-CIO Housing Development Corp. v. Town of Madawaska,* 523 A.2d at 583, 585 (housing provided to low income elderly or handicapped individuals who pay a fraction of the housing cost).

Piper Shores does not set its entrance fees or monthly fees based on residents' ability to pay. It does not subsidize entrance fees in any instance nor does it reduce its monthly fees except in rare and isolated instances. Under its benevolence policy, Piper Shores will not terminate the residency of a person who, once admitted, becomes unable to pay the monthly fees, and it will advance funds to help residents pay those fees. However, it does so only after the unpaid amounts are charged against the repayable portion of the resident's entrance fee and after recourse has been sought from any guarantor. In 2016 the benevolence offered by Piper Shores amounted to slightly less than ½ of one percent of its monthly fee income. This is insufficient to transform Piper Shores into a charitable organization.

Finally, the court cannot find that the non-charitable operations of Piper Shores (the 200 independent living units in 160 apartments and 40 cottages) are only incidental to the 50 assisted living and 40 skilled nursing units that would, if considered alone, qualify for tax exemption.

From the summary judgment record, it appears that Piper Shores is a beneficial and valuable institution which provides comfortable independent living accommodations with first class amenities for retirees who have the necessary financial resources and which thereafter provides continuing care to those individuals as their health needs change. If it were to be granted a tax exemption, however, a greater tax burden would fall on other residents of Scarborough, including elderly retirees who are unable to afford Piper Shores. The court does not find that Piper Shores falls within the definition of a charitable institution entitled to tax exemption pursuant to 36 M.R.S. § 652(1)(A).

14

The entry shall be:

Plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is granted, and the complaint is dismissed. The clerk shall incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: February _18_, 2020

Thomas D. Warren
Justice, Superior Court

Entered on the Docket: 02/21/20.

15