**WELLINGTON ASSOCIATES, INC.**

v.

**CAPITAL FIRE PROTECTION CO., INC.**

Supreme Judicial Court of Maine.

Submitted on Briefs June 19, 1991.
Decided July 29, 1991.

Robert E. Mongue, Coles & Mongue, Kennebunk, for plaintiff.

Bruce E. Hochman, Black, Lambert, Coffin & Rudman, Portland, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, COLLINS and BRODY, JJ.

BRODY, Justice.

Wellington Associates, Inc. ("Wellington") appeals from a judgment entered by the Superior Court (York County, *Brennan, J.*) adopting a referee's findings in a contract dispute between Wellington and Capital Fire Protection Co., Inc. ("Capital Fire"). On appeal, Wellington contends that the referee erred in finding that it is not entitled to damages for lost profits caused by Capital Fire's delay in performing under the contract and expenses incurred due to Capital Fire's improper installation of parts of a fire protection sprinkler system. Finding no error, we affirm the judgment.

Wellington is the owner and developer of Wellington Manor, a residential complex located in Wells. Wellington contracted with a general contractor to construct the complex and the general contractor subcontracted with Capital Fire for the installation of a fire protection system. While construction was underway, the general contractor defaulted on its obligations and Wellington and Capital Fire agreed, with

minor modifications,[1] that they would continue with the installation in accordance with the terms set forth in the agreement between Capital Fire and the general contractor. By the time Capital Fire completed installation of the fire protection system in November, 1986, Wellington had signed non-binding "reservation agreements" with a number of prospective buyers. Some of these agreements never resulted in sales and Wellington contends that they failed because of Capital Fire's three month delay in completing the fire protection system.

There were other problems with the fire protection system. In October, 1986, some sprinkler heads discharged water because Capital Fire had installed a valve incorrectly. The discharged water destroyed a telephone system that Wellington claims cost $9000 to replace. An invoice from the telephone company reflects a charge of $2675. Capital Fire corrected the problem with the valve but did not compensate Wellington for the cost of replacing the telephone system. In addition, Wellington discovered that some of the sprinkler system pipes had been installed so that they were exposed, contrary to contract specifications. Wellington hired a carpenter to enclose the pipes at a cost of $1700. Then, in November, 1986, a sprinkler piping elbow broke in one of the buildings flooding the cellar and causing water damage estimated at $801.

Wellington filed a complaint against Capital Fire alleging breach of contract and seeking damages for lost profits caused by the delay in completing the system and for negligent construction. With the agreement of the parties, the Superior Court appointed a referee pursuant to M.R.Civ.P. 53 to hear evidence and prepare a report in the case. The referee submitted a report finding that Wellington was entitled to judgment in the amount of $1700 to compensate for expenses incurred to enclose the pipes but declined to award any additional damages. Following the court's adoption of the referee's findings, over the

---

1. The substance of the modifications is in dispute: Wellington contends that the parties agreed to a completion date of August 15, 1986 and modified the contract accordingly; Capital Fire contends that the only modification involved agreement that a different kind of system would be installed at a slightly higher cost.

objection of both parties, Wellington appealed.

On appeal, Wellington contends that the referee erred in finding that it is not entitled to damages to compensate for (a) lost profits caused by Capital Fire's delay in completing the system, (b) expenses incurred in replacing the telephone system damaged as a result of the improperly installed valve and (c) water damage caused when the piping elbow broke. We disagree.

 M.R.Civ.P. 53 enables the Superior Court to appoint a referee to assist in the disposition of a pending case. The referee hears the evidence and prepares a report upon the matters submitted for disposition. If the referee is required to make findings of fact and conclusions of law, the Rule requires the referee to state them in the report. M.R.Civ.P. 53(e)(1). The Rule requires the Superior Court to adopt the referee's factual findings unless they are clearly erroneous. M.R.Civ.P. 53(e)(2). On appeal, we will uphold the court's adoption of those factual findings if there is credible, probative evidence supporting them, even though there may be evidence to support contrary findings. *Cercena v. Cote,* 572 A.2d 487, 489 (Me.1990). Unless the referee's powers are limited pursuant to M.R.Civ.P. 53(c), the referee may exercise the same discretionary powers available to the Superior Court in disposing of the case. *See In re McLoon Oil Co.,* 565 A.2d 997, 1001 (Me.1989); *Adams v. Alley,* 340 A.2d 201, 205–06 (Me.1975); 1 Field, McKusick & Wroth, *Maine Civil Practice* § 53.1 at 697 (2d ed 1970). When the court adopts the referee's report in full, as it did here, we review the judgment as if reviewing the referee's decision directly. *Cercena v. Cote,* 572 A.2d at 489.

### Lost Profits

 In its attempt to established damages attributable to Capital Fire's three month delay in completing the fire protection system, Wellington presented testimony from its President and Treasurer, Leon P. Piatelli, indicating that the system was the last important construction project to be completed and that its completion was required before a certificate of occupancy could be obtained. Wellington also offered testimony from its realtor indicating that several prospective buyers had entered into non-binding reservation agreements to buy a condominium at Wellington Manor that subsequently failed. The referee reviewed the proffered evidence but concluded that the reservation agreements, which expressly state "[t]his is not a purchase agreement or contract of sale," were not reliable indicators of losses attributable to Capital Fire's delay in completing the fire protection system. The referee found that the failure of the agreements was as readily attributable to the stock market crash in October, 1987 and the general down-turn in the economy. Accordingly, the referee declined to award damages for lost profits.

There is no indication in the record that the court placed any restrictions upon the referee's power to exercise discretion in assessing the reliability of and in determining the weight to be afforded to proffered evidence. Indeed, this was the essence of the referee's task as factfinder. *See In re McLoon Oil Co.,* 565 A.2d at 1006. In the absence of any other evidence demonstrating that the failure of the reservation agreements is directly attributable to Capital Fire's delay in completing the fire protection system, we find no error in the referee's conclusion that Wellington is not entitled to damages for lost profits.

### Negligent Installation of a Valve

 Leon P. Piatelli testified that Wellington spent approximately $9000 to replace a telephone system allegedly damaged when the sprinklers installed by Capital Fire discharged water due to the improper installation of a valve. He also testified that Wellington was reimbursed by its insurance carrier for this amount. Piatelli was unable, however, to document an exact cost figure for the repairs and an invoice from the telephone company reflects a charge of only $2675.

Capital Fire admits to installing the valve incorrectly but objected to the referee's consideration of the invoice in assessing

damages on the ground that there was no credible evidence, other than Piatelli's testimony, to link the invoice to the valve problem. The referee overruled Capital Fire's objection and considered Piatelli's testimony and the invoice but declined to award any damages in connection with the valve problem. Although he stated no findings on this issue, the referee apparently found Piatelli's testimony insufficient to link the invoice to the valve problem. In the absence of any other evidence, we cannot say that the referee erred in declining to award damages to compensate for the cost of repairing the telephone system.

Negligent Installation of a Piping Elbow

 Wellington appears to concede that it failed to produce sufficient evidence to demonstrate that Capital Fire was negligent in installing a piping elbow in the fire protection system. Wellington contends, however, that the referee should have applied the doctrine of res ipsa loquitur to make up for the lack of evidence of negligence.

 The doctrine of res ipsa loquitur is applicable where (i) there has been an unexplained accident, (ii) the instrument that caused the injury was under the management or control of the defendant and (iii) in the ordinary course of events, the accident would not have happened absent negligence on the part of the defendant. *Parker v. Harriman*, 516 A.2d 549, 551 (Me.1986); *Ginn v. Penobscot Co.*, 334 A.2d 874, 878 (Me.1975). If the plaintiff is able to produce evidence establishing each element of the doctrine, the burden of proof shifts to the defendant who must demonstrate the absence of negligence.

Wellington presented no evidence to show that piping elbows are unlikely to burst absent negligence in their installation. Indeed, the record contains ample evidence indicating that frozen pipes could have caused the elbow to rupture. Capital Fire presented testimony indicating its concern about the lack of heat in the crawl spaces provided for the sprinkler system and Wellington does not dispute that it bears the responsibility of keeping the crawl space heated. Given that the rupture occurred in November, it is not unreasonable to conclude that frozen pipes were in fact responsible. Clearly, this accident could have happened in the absence of negligence on the part of Capital Fire. The burden of proof on the issue of negligence correctly remained with Wellington and the referee committed no error in concluding that Wellington failed to carry its burden of proof.

The entry is:

Judgment affirmed.

All concurring.