STATE OF MAINE
PENOBSCOT, ss

SUPERIOR COURT
Civil Action
Docket No. CV-19-0129

DAVID OGEN,

Plaintiff,

v.

JAMES ALEXANDER,

Defendant.

ORDER DENYING CROSS-MOTIONS
FOR SUMMARY JUDGMENT

Plaintiff David Ogden filed a complaint against Defendant James Alexander alleging that he is liable to Plaintiff for injuries he caused to plaintiff while operating a "Lull" forklift telehandler during a home improvement project. Plaintiff's sole cause of action is negligence. The Defendant now moves for summary judgment on the grounds that Plaintiff is unable to prove all of the elements of negligence. Plaintiff opposes this motion and has responded by filing his own motion for summary judgment, in which he contends that he has established all of the elements of his cause of action without factual dispute and is therefore is entitled to judgment as a matter of law. The Court denies both motions.

## I.   STANDARD OF REVIEW

The Court will grant summary judgment when it is shown through the parties' statements of material fact and the portions of the record referred to therein that no genuine dispute as to any material exists and that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. The Court's analysis of the record is limited to the facts properly set forth in the parties' respective statements of material facts and the portions of the record to which the statements refer. *Holmes v. E. Me. Med. Ctr.*, 2019 ME 84, ¶ 14, 208 A.3d 792; *Berry v. Mainestream Fin.*, 2019 ME 27, ¶ 7, 202 A.3d 1195. A fact is "material" when it has the potential to affect the outcome of the case. *Lougee Conservancy v. City Mortgage, Inc.*, 2012 ME 103, ¶

1

11, 48 A.3d 774. A "genuine issue of material fact exists when a fact-finder must choose between competing versions of the truth." *Holmes*, 2019 ME 84, ¶ 15, 208 A.3d 792. In examining the summary judgment record, the Court considers the facts in the light most favorable to the non-moving party. *Cormier v. Genesis Healthcare LLC*, 2015 ME 161, ¶ 7, 129 A.3d 944. Any doubt as to whether the moving party has demonstrated that no genuine issue of material fact exists "will be resolved against the movant, and the opposing party will be given the benefit of any inferences which might reasonably be drawn from the evidence." 3 Harvey & Merritt, *Maine Civil Practice* § 56:6 at 242 (3d, 2018-2019 ed.); *Beaulieu v. Aube Corp.*, 2002 ME 79, ¶ 2, 796 A.2d 683 (ambiguities in the record are resolved in favor of the nonmovant). When the parties' file cross-motions for summary judgment, as the parties' have here, the "basic Rule 56 standard" is unaltered and each motion is analyzed separately. *Osprey Landing LLC* v. *First Am. Title Ins. Co.*, 2017 ME 46, ¶ 7, 157 A.3d 247; *F.R. Carroll, Inc. v. TD Bank, N.A.*, 2010 ME 115, ¶ 8, 8 A.3d 646.

The moving party's burden on a motion for summary judgment differs depending on whether the moving party has the burden of proof on the claim or defense at issue. Where it is the defendant who moves for summary judgment, the defendant has the initial burden of showing through a properly supported statement of material facts (S.M.F.) that the evidence will fail to establish a prima facie case for each element of the plaintiff's cause of action. *Holmes*, 2019 ME 84, ¶ 16, 208 A.3d 792; *see also Maine Civil Practice* § 56:6 at 242 ("[t]he initial burden under Rule 56 lies with the moving party to demonstrate clearly the absence of a genuine issue of material fact"). If the defendant satisfies this burden, the plaintiff must respond by producing the evidence necessary to "establish a prima facie case for each element of [his or her] cause of action." *Lougee Conservancy*, 2012 ME 103, ¶ 12, 48 A.3d 774. This standard requires only that the plaintiff produce "enough evidence to allow the [trier-of-fact] to infer the fact at issue and rule in the party's favor." *Id.*; *see also Estate of Smith v. Cumberland Cty.*, 2013 ME 13, ¶ 19, 60 A.3d 759 ("[i]n order to survive summary judgment, a plaintiff in a tort case must point to evidence in the record to support each element of his or her claim. . . evidence of factual

2

elements offered to prove a claimed tort, submitted in opposition to summary judgment, need not be persuasive . . . but the evidence must be sufficient to allow a fact-finder to make a factual determination without speculating"). If the plaintiff fails to satisfy this burden as to any essential element of his or her cause of action, the defendant is entitled to summary judgment. *Lougee Conservancy*, 2012 ME 103, ¶ 12, 48 A.3d 774.

Where it is the plaintiff (i.e. the party who bears the ultimate burden of persuasion on the claim or defense at issue) who has moved for summary judgment, the plaintiff bears the burden of demonstrating "that each element of [his or her] claim is established without dispute as to material fact within the summary judgment record" such that the plaintiff would be entitled to summary judgment as a matter of law at trial. *Kondaur Capital Corp. v. Hankins*, 2011 ME 82, ¶ 17, 25 A.3d 960; *Cach LLC*, 2011 ME 70, ¶ 9, 21 A.3d 1015; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting) ("[i]f the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial. . . such an affirmative showing shifts the burden of production to the party opposing the motion. . ."). If the plaintiff's motion is properly supported and demonstrates the plaintiff is entitled to judgment as a matter of law, the burden then shifts to the defendant to respond with specific facts establishing a genuine factual issue for trial. M.R. Civ. P. 56(e); *see also Celotex Corp.*, 477 U.S. at 331 (Brennan, J., dissenting).

## II.   SUMMARY JUDGMENT RECORD

The summary judgment record consists of the facts set forth in the parties' respective statements of material facts filed according to the requirements of Rule 56(h)(1), any opposing statements of fact or statements of additional facts filed in response under Rule 56(h)(2)-(3), and the portions of the record referred to in these statements. *See* M.R. Civ. P. 56(h); *Berry v. Mainestream Fin.*, 2019 ME 27, ¶ 7, 202 A.3d 1195. Rule 56(h) sets forth a specific procedure regarding the manner in

3

which facts are presented in these statements. Failure to adhere to the procedure set forth in Rule 56(h) can have significant impacts on what facts are included in the summary judgment record and consequently the outcome of the motion. *See e.g. First Tracks Invs., LLC v. Murray, Plumb & Murray,* 2015 ME 104, ¶¶ 2-3, 121 A.3d 1279; *Stanley v. Hancock Cty. Comm'rs,* 2004 ME 157, ¶¶ 18-19, 864 A.2d 169; *Doyle v. Dep't of Human Servs.,* 2003 ME 61, ¶¶ 11-13, 824 A.2d 48 *Levine v. R.B.K. Caly Corp.,* 2001 ME 77, ¶¶ 4-9, 770 A.2d 653.

A few of these procedural requirements in Rule 56(h) have important implications for the Court's analysis of the parties' respective motions. First, Rule 56(h)(2) requires the party opposing summary judgment to file an opposition statement responding to the moving party's statement of material facts. This opposing statement of material facts (O.S.M.F.) must "explicitly admit, deny, or qualify facts by reference to each numbered paragraph" and support each denial or qualification with a record citation that refers to evidence of a quality that could be admissible at trial. *Stanley,* 2004 ME 157, ¶ 13, 864 A.2d 169; *Levine,* 2001 ME 77, ¶ 6, 770 A.2d 653; M.R. Civ. P. 56(h)(2). Where the moving party files a properly supported statement of material facts, the facts set forth in the statement are deemed admitted unless properly controverted. M.R. Civ. P. 56(h)(4). Here, Defendant filed a properly supported S.M.F. and Plaintiff filed an O.S.M.F. that denies or qualifies several paragraphs of the defendant's statement; however, Plaintiff failed to include any record citations to support his denials and qualifications. (*See* Supp.'g S.M.F. ¶¶ 10, 12, 15, 18-19, 23, 25; Opp. S.M.F. ¶¶ 10, 12, 15, 18-19, 23, 25.) Accordingly, because Plaintiff has failed to properly controvert those paragraphs of Defendant's S.M.F. and has otherwise admitted each paragraph of the S.M.F., the Court deems Plaintiff to have admitted all of the facts set forth in Defendant's S.M.F. *Stanley v. Hancock Cty. Comm'rs,* 2004 ME 157, ¶ 18, 864 A.2d 169; M.R. Civ. P. 56(h)(2)-(4).

M.R. Civ. P. 56(h)(2) further provides that the nonmoving party's response to the moving party's S.M.F. "may contain in a separately titled section any additional facts" which the party "contends raise a disputed issue for trial." Plaintiff's response to Defendant's S.M.F. included such a

4

separately titled statement and supported with appropriate record citations. Although Plaintiff has admitted all of the facts set forth in Defendant's S.M.F., the Court will consider Plaintiff's S.A.F. "for any additional facts that may be material" and are properly supported according to the requirements of Rule 56. *Prescott v. State Tax Assessor*, 1998 ME 250, ¶ 6, 721 A.2d 169; *see also Olcott v. Port Resort Realty Corp.*, Cum-CV-00-0311, 2001 Me. Super. LEXIS 45, at *3 (March 22, 2001). In any instances where the Plaintiffs' S.A.F. contradicts the facts set forth in the S.M.F. the Court will use the facts supplied by the S.M.F., as Plaintiff has admitted those facts. Based on Plaintiffs' briefing, the Court also understands that it is Plaintiff's intent to use the S.A.F. also as a S.M.F. to support his own motion for summary judgment. The Court will allow Plaintiff to do so and will consider Defendant's reply statement as an O.S.M.F. for purposes of Plaintiff's separate motion for summary judgment.

As another initial matter, the Court notes that Plaintiff has submitted a supplement to her S.A.F. seeking to add two paragraphs numbered as ¶ 35 and ¶ 36, respectively. However, the Court will not consider the facts set forth in this supplement, as Rule 56 does not provide for such a filing and Plaintiff did not seek the Court's leave prior to filing the supplement. Furthermore, ¶ 35 of the supplement relies on an affidavit that is unsworn and therefore, could not be considered even if the Court permitted Plaintiff to supplement his S.A.F. M.R. Civ. P. 56(e); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 6, 770 A.2d 653 (facts presented in a motion for summary judgment must be supported by record citations that refer to "evidence of a quality that could be admissible at trial"); M.R. Evid. 603 (to be admissible in evidence at trial, a witness's testimony must be sworn).

## A. Defendant's Statement of Material Facts

Defendant presented the following factual assertions in his S.M.F. along with supporting record citations: Defendant lives in a house in Greenfield Township in Maine; he rents the house's upstairs apartment to Plaintiff David Ogden. (Supp.'g S.M.F. ¶ 1.) Plaintiff has worked for twelve years at a metal fabrication shop, Alexander Mechanical Solutions, located across the street; the shop is owned by Defendant's son, Jimmy Alexander. (Id. ¶ 2.) All three of them worked on various projects

5

to maintain Defendant's residential building. (*Id.* ¶ 3.) Jimmy owned a Lull for work in the fabrication shop which Plaintiff used "almost every day" for "as long as" Jimmy "owned it" for tasks such as transporting shop materials. (*Id.* ¶ 4.) Jimmy constructed a caged platform that could be attached to the Lull's forks and used to lift people up. (*Id.*) Plaintiff used the Lull with the platform "quite a few times" before his injury and was "very familiar" with the operation of the Lull. (*Id.* ¶¶ 4-5.) Plaintiff generally felt safe when he was working from the platform. (*Id.* ¶ 11.)

One day, Plaintiff agreed to help Defendant paint the back of his house. (*Id.* ¶ 6.) Plaintiff suggested that they spray paint the house using Lull and Defendant agreed. (*Id.* ¶ 7.) To complete the work, they decided that Defendant would operate the Lull while Plaintiff spray painted from atop the caged platform attached to the Lull's forks. (*Id.* ¶ 8.) Plaintiff drove the Lull from the fabrication shop after work, positioned it near Defendant's house, and then got in the platform. (*Id.* ¶ 12.) Defendant got into the Lull's cab and operated the Lull's controls to move the platform according to Plaintiff's directions. (*Id.*) Defendant had experience operating the Lull from previous projects, which included installing a metal roof on the house with Plaintiff. (*Id.* ¶ 9.) Plaintiff did not have any concerns regarding Defendant's ability to safely operate the Lull. (*Id.* ¶ 10.) They worked in this manner for about an hour until their paint sprayer broke. (*Id.* ¶ 13.)

They resumed the next afternoon, with Plaintiff once again driving the Lull to Defendant's house, positioning it, and putting the parking brake on before entering the Lull's platform. (*Id.* ¶ 14.) To finish the painting, the two needed to reach a particular portion of the house about thirty feet off the ground. (*Id.* ¶ 15-17. In furtherance of this goal, Plaintiff called directions to Defendant until Defendant had maneuvered the platform until it was just below where Plaintiff needed it to be to continue painting. (*Id.* ¶ 15.) At this point, the Lull's boom was not at its maximum height or extension. (*Id.* ¶ 16.) Because further adjustment was needed, Plaintiff called down to Defendant "you've got to come up higher" and also told him to move the platform slightly forward. (*Id.* ¶¶ 17-18.) Plaintiff intended to tell Defendant to stop moving the platform when it had reached Plaintiff's

6

desired position. (*Id.*) Defendant moved the boom forward until Plaintiff told him to stop. (*Id.* ¶ 18.) Then "Plaintiff turned around to look at the house, and before Defendant started to raise the boom arm, felt a 'tweak sideways,' then turned back around" and noticed that the Lull had begun to tip over. (*Id.* ¶ 19.) Defendant then attempted to pull the Lull's boom in but was unable to prevent the Lull from tipping on its side. (*Id.* ¶¶ 21, 23.) The Lull's tires came off the ground, the platform crashed to the ground, and Plaintiff suffered injuries. (*Id.* ¶¶ 28-29.)

Plaintiff believes that, based on the way the platform felt and tilted before it tipped over, Defendant "touched[1] the wrong lever." (*Id.* ¶ 19, 24.) Plaintiff also believes that, once the Lull started tipping over, Defendant could have stopped it by quickly lowering the Lull's boom. (*Id.* ¶ 22.) Defendant testified at his deposition that he does not know why the Lull tipped over. (*Id.* ¶ 25.) Plaintiff and Defendant agree that they were the only ones present when the Lull tipped over. (*Id.* ¶ 30.) Defendant also states that Plaintiff has not had an expert examine the Lull, provide any opinion as to why the Lull tipped over, or provide any opinion regarding the standard of care that Lull operators should exercise. (*Id.* ¶ 33.)

## B. Plaintiff's Statement of Additional Facts

Plaintiff's S.A.F. contains the following additional factual assertions: Prior to his injury, Plaintiff worked at Alexander Mechanical Solutions as a welder and fabricator. (Pl.'s S.A.F. ¶ 15.) Plaintiff assisted Jimmy Alexander in fabricating the caged platform, which was affixed to the Lull's forks. (*Id.* ¶ 16). The caged platform is depicted in exhibits nine and ten attached to the transcript of Defendant's deposition. (*Id.* ¶ 14.)[2] The platform was damaged as a result of the incident and discarded. (*Id.* ¶ 17.)

---

[1] Plaintiff used the words "I think he touched the wrong lever" and when asked to elaborate on why he thinks this Plaintiff stated, "[b]ecause just the way it tilted" and "[j]ust the way the basket kind of tweaked, just the way the basket tweaked, that's how I think." (Supp.'g S.M.F. ¶ 24) (referencing Pl.'s Dep. 57:8-58:17).
[2] Defendant denies this statement but the portions of the record he referenced do not actually support his denial; therefore, the statement should be deemed admitted. M.R. Civ. P. 56(h)(3)-(4).

The Lull's boom and forks (which the platform was attached to) are controlled by two levers in the Lull's cab. (*Id.* ¶¶ 21-25.) The Lull's boom is controlled by "Lever 1" and the forks are controlled by "Lever 2." (*Id.* ¶¶ 22-24.) The controls are depicted in Exhibit B of Jimmy Alexander's affidavit. (*Id.* ¶ 22.) Moving Lever 1 to the right extends the Lull's boom. (*Id.* ¶ 31.) The forks can be tilted to the right or left and tilted forward and back. (*Id.* ¶ 25.) Moving Lever 2 to the right raises the right fork, tilting the carriage to the left. (*Id.* ¶ 32.)

During his deposition, Defendant, after noting that he had not been in the Lull's cab for two years, responded that he did not know which lever is used to extend the Lull's boom and does not know what lever he used to extend the boom on the day of Plaintiff's injury. (*Id.* ¶ 30; Def.'s Reply to S.A.F. ¶ 30.) Defendant looks at the Lull's boom[3] when he is operating the Lull. (Pl.'s S.A.F. ¶ 33.)[4] When the Lull tipped over, the platform was raised up approximately 30 feet off the ground and was near the peak of the roof. (*Id.* ¶ 13.)

## III. ANALYSIS

Negligence has four elements: "(1) a duty of care owed to the plaintiff; (2) a breach of that duty; (3) an injury; and (4) causation, that is, a finding that the breach of the duty of care was a cause of the injury." *Estate of Smith v. Cumberland Cty.*, 2013 ME 13, ¶ 16, 60 A.3d 759.

The "duty" element inquires as to "whether a defendant is under any obligation for the benefit of the plaintiff." *Reid v. Town of Mount Vernon*, 2007 ME 125, ¶ 15, 932 A.2d 539. If such a duty exists, "that duty is to conform to the legal standard of reasonable conduct in the light of the apparent risk." *Id.*; *Searles v. Trs. of St. Joseph's Coll.*, 1997 ME 128, ¶ 5, 695 A.2d 1206. Whether the defendant owes

---

[3] This ¶ of the S.A.F. relies on page 52 lines 8-11 of a transcript of Defendant's deposition where he states "this boom, it picks up, I'm sitting here and I can see it. I'm looking at it, the boom . . . Q: You're looking at it when you're operating? A: Yes."

[4] Defendant attempts to qualify this fact by denying "any inference that he does not also look at the levers when he operates the Lull", (Def.'s Reply to S.A.F. ¶ 33), but his record citations do not actually support his assertion that he also looks at the levers when operating the Lull. Consequently, Defendant has failed to controvert Plaintiff's statement. M.R. Civ. P. 56(h)(4).

the plaintiff a duty of care is an issue of law. *Belyea*, 2010 ME 75, ¶ 6, 2 A.3d 276. A breach of duty occurs when the defendant does something that an ordinary careful person would not do or fails to do something which an ordinary person would do in the same situation—it is the failure to use ordinary care under the circumstances, considering all of the facts in the case. Alexander, *Maine Jury Instruction Manual* § 7-61 (2020-2021 ed.); Simmons, Zillman, & Furbish, *Maine Tort Law* § 7.11 (2018 ed. 2017). "Whether a person breached his or her duty of care is a question of fact." *Estate of Smith*, 2013 ME 13, ¶ 17, 60 A.3d 759. The presence of injury or damages is also regarded as a question of fact. *Id.*

The question of whether the defendant's breach of the duty of care was a cause of the plaintiff's injury is similarly a matter for the trier of fact. *Estate of Smith*, 2013 ME 13, ¶ 17, 60 A.3d 759. On a motion for summary judgment, the Court will find that the plaintiff has satisfied the causation element if the facts in the summary judgment record along with any reasonable inferences that may be drawn from those facts, indicate "that the [defendant's] negligence played a substantial part in bringing about or actually causing the injury or damage and that the injury or damage was either a direct result or a reasonably foreseeable consequence of negligence." *Grant v. Foster Wheeler, LLC*, 2016 ME 85, ¶ 15, 140 A.3d 1242; *Estate of Smith*, 2013 ME 13, ¶ 17, 60 A.3d 759 (the element requires a "reasonable causal connection demonstrated in the record between the act or omission of the defendant and the damage that the plaintiff has suffered"); *Houde v. Millet*, 2001 ME 183, ¶ 11, 787 A.3d 757 ("the mere possibility of such causation is not enough").

The plaintiff's evidence regarding breach, injury, and causation, "need not be persuasive" at the summary judgment stage "but the evidence must be sufficient to allow a fact-finder to make a factual determination without speculating." *Estate of Smith*, 2013 ME 13, ¶ 19, 60 A.3d 759; *see also Addy v. Jenkins Inc.*, 2009 ME 46, ¶¶ 10-15, 969 A.2d 935 (affirming summary judgment for the defendant where a jury could not reasonably find that the defendant caused the plaintiff's injury without relying on "speculation or conjecture"); *Quirion v. Geroux*, 2008 ME 41, 942 A.2d 670 (affirming summary judgment for the defendant where the plaintiff presented no evidence that the

defendant breached his duty of care); *Houde v. Millett*, 2001 ME 183, 787 A.2d 757 (affirming summary judgment where the plaintiff failed to present sufficient evidence of the proximate cause of her injuries).

### C. Expert Evidence

Defendant's motion for summary judgment is based in large part on his contention that the proper operation of a piece of heavy construction equipment, such as the Lull that the parties were using in this case, is not a matter within the common knowledge of lay persons and therefore, Plaintiff is obligated to submit expert opinion testimony to establish the appropriate standard of care, whether a breach occurred (i.e. whether the Defendant operated the Lull improperly), and whether such a breach caused the Lull to tip over. Defendant contends that because Plaintiff has not produced any such expert opinion evidence, Plaintiff is unable to demonstrate a prima facie case and therefore, Defendant is entitled to summary judgment.

Maine's Supreme Judicial Court has in certain circumstances required tort plaintiffs to produce expert evidence to sustain a negligence action. The familiar rule is that expert testimony is necessary to sustain a negligence action in Maine when the standard of care against which a defendant's conduct will be measured, whether a breach of the applicable standard occurred, and/or the cause of the damages resulting from the breach are matters "within the knowledge of experts only, and not within the common knowledge of laypersons." *Maravell v. R.J. Grondin & Sons*, 2007 ME 1, 914 A.3d 709, 712 (Me. 2007); *see also Pawlendzio v. Haddow*, 2016 ME 144, ¶ 12, 148 A.3d 713; *Searles v. Trustees of St. Joseph's College*, 1997 ME 128, ¶ 10, 695 A.2d 1206; *Seven Tree Manor, Inc. v. Kallberg*, 1997 ME 10, ¶ 7, 688 A.2d 916; *Cyr v. Giesen*, 150 Me. 248, 251-252, 108 A.3d 316 (1954). Generally, the purpose of requiring expert testimony in such circumstances, is to "protect against the potential danger that a jury, composed of laymen and gifted with the benefit of hindsight, will divine the breach of an obligation largely on the basis of the unfortunate result." *Montany v. Univ. of New England*, 858 F.3d 34, 38 (1st Cir. 2017) (collecting cases and applying Maine law); *Wooley v. Henderson*, 418 A.2d

10

1123, 1131 (Me. 1980). Where the law requires the plaintiff to produce expert testimony to prove his or her negligence claim and the plaintiff fails to produce such evidence, the defendant is entitled to judgment as a matter of law. *See e.g. Montany*, 858 F.3d at 40; *Pawlendzio*, 2016 ME 144, ¶¶ 9-15, 148 A.3d 713; *Michaud v. Blue Hill Mem'l Hosp.*, 2008 ME 29, ¶¶ 6-7, 942 A.2d 686.

Since adopting this rule, the Law Court has held that expert testimony is ordinarily necessary[5] to sustain an action for professional negligence against medical professionals, dentists, attorneys, and engineers. *See e.g. Cyr*, 150 Me. at 251-252; *Welch v. McCarthy*, 677 A.2d 1066, 1067-1069 (Me. 1996); *Pawlendzio*, 2016 ME 144, ¶¶ 9-15, 148 A.3d 713; *Seven Tree Manor*, 1997 ME 10, ¶ 7, 688 A.3d 916 The Law Court has also determined that expert testimony is necessary to sustain a negligence action brought against a general contractor for damages allegedly resulting from the general contractor's purported negligent supervision of a subcontractor conducting blasting and an action against a college athletic trainer based on his allegedly negligent treatment of the plaintiff's injury and failure to properly advise an athletic coach as to the plaintiff's injury. *Maravell*, 2007 ME 1, ¶¶ 11-12, 914 A.2d 709; *Searles*, 1997 ME 128, ¶ 10, 688 A.2d 916. However, the Law Court has never held that expert testimony is generally required to sustain a negligence action premised on purportedly negligent operation of heavy construction equipment.

To support his argument that the Court should extend the expert evidence requirement to the circumstances of this case, Defendant cites to a string of cases from outside of this jurisdiction including: *Siebern, Missouri-Illinois Tractor & Equipment Co.*, 711 S.W. 2d 935 (Mo. Ct. App. 1986); *Brown v. Raymond Corp.*, 432 F.3d 640 (6th Cir. 2005); *McWilliams v. Yale Carolinas Inc.*, No. 2:13-CV-351-WC, 2014 U.S. Dist. LEXIS 61733 (M.D. Al. 2014); *Bibbs v. Southeastern Pennsylvania Transp. Authority*, Pa. Commw. Ct. at *3, 2012 WL 8704635 (unpublished). In all of these cases, the respective court considered whether expert testimony was necessary to sustain a products liability action

---

[5] Even in cases where the plaintiff would ordinarily be required to present expert opinion evidence to sustain the negligence action, such evidence is not necessary "where the negligence and harmful results are sufficiently obvious as to lie within common knowledge." *See e.g. Searles v. Trustees of St. Joseph's College*, 1997 ME 128, ¶ 10, 695 A.2d 1206; *Walter v. Wal-Mart Stores, Inc.*, 2000 ME 63, ¶ 31, 748 A.2d 961.

11

premised on an alleged defect in the design or manufacture of a forklift or other specialized heavy vehicle, with all of them answering the question in the affirmative. However, the applicability of these product liability cases to the circumstances at hand is questionable at best. The issue of whether a piece of heavy equipment is defective in its design or manufacture is significantly different from the issue of whether a person negligently operated the equipment. The former necessarily involves a technical inquiry into the respective products' engineering and manufacturing process, while the latter involves an inquiry into whether the operator acted with reasonable care in the circumstances. Defendant also cites a number of other cases for the proposition that courts do not believe that the cause and probability of a piece of heavy equipment tipping over is a matter within the common knowledge of lay persons, namely *Edwards v. Kalmar Indus. Oy Ab*, No. 3:14-cv-05241-RJB, 2016 U.S. Dist. LEXIS 128256 (W.D. Wash., Sept. 20, 2016), *,Cochran v. Brinkmann Corp.,* No. 1:08-cv-1790-WSD, 2009 U.S. Dist. LEXIS 114814 (N.D. Ga., Dec. 9, 2009), *Siebern*, 711 S.W. 2d 935, and *Carley v. Wheeled Coach*, 991 F.2d 1117 (3rd Cir. 1993). However, all of these cases addressed the technical issue of whether a particular product had a design or manufacturing flaw that resulted in instability, which is a matter of little relevance here. The Court agrees that expert evidence would be necessary in some circumstances to sustain a products liability based on a design flaw because of the technical issues involved; however, it does not agree that this is germane to the issue of whether expert evidence is necessary to sustain a negligence action premised on conduct rather than a product defect.

Defendant's argument is also unpersuasive because of the nature of the Plaintiff's negligence claim in this case. Plaintiff is claiming that he was injured due to the Defendant's negligent operation of a Lull telehandler that they borrowed from a commercial business to complete a "do-it-yourself" home improvement project. The case does not involve the conduct of professionals in the construction trade or other fields nor does it involve questions of design or manufacturing process; rather, it centers on the question of whether a layman, the Defendant, failed to act as a person of ordinary care and prudence would while working with the Plaintiff on a home-improvement project in similar

12

circumstances. In other words, to decide on plaintiff's negligence claim the jury would not be asked to make findings regarding the conduct of professionals or determine whether the Lull is defective but to make findings regarding the conduct of a lay person and the results that flowed from that conduct.

The Law Court has never held that expert testimony is generally required to sustain a negligence action premised on purportedly negligent operation of heavy equipment. This additional requirement has generally been confined to professional negligence actions brought against medical professionals, attorneys, and engineers. The question of whether the expert evidence requirement should be imposed on negligence plaintiffs seeking relief in other circumstances should not be taken lightly. After reviewing the record and the arguments submitted by the Defendant, the Court is unpersuaded that it should impose for the first time in Maine an expert testimony requirement in a negligence action premised on the purportedly negligent operation of a piece of heavy equipment by a lay person during a private home improvement project. Accordingly, the Court rejects Defendant's argument that he is entitled to summary judgment due to Plaintiff's failure to produce expert opinion evidence to support his case.

### D. Res Ipsa

Plaintiff's motion for summary judgment is primarily based on his contention that he has conclusively established that the doctrine of res ipsa loquitur applies to his negligence claim against Defendant. He argues that because he has demonstrated the doctrine applies, the burden of proof has shifted to the Defendant to demonstrate the absence of negligence and, as Defendant is unable make this showing, the doctrine requires the Court to determine that Defendant is negligent as a matter of law.

Res ipsa loquitur "is neither substantive law nor a theory of negligence. . . it is a form of circumstantial evidence that permits a jury to infer negligence and causation from the mere occurrence of events." *Poulin v. Aquaboggin Waterslide*, 567 A.2d 925, 926 (Me. 1989). The jury is

13

permitted to draw this inference if the plaintiff produces evidence establishing the following elements by a preponderance of the evidence:

    i.      there has been an injury to the plaintiff caused by an unexplained accident;

    ii.     at the time of the injury, the instrument which caused the injury was under the defendant's control or management;

    iii.    in the ordinary course of events, the accident would not have happened absent negligence on the part of the defendant;

    iv.    other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence.

Alexander, *Maine Jury Instruction Manual* § 7-65 (2020-2021 ed.); *Sheltra v. Rochefort*, 667 A.2d 868, 870 (Me. 1995); *Wellington Assocs. v. Capital Fire Prot. Co.*, 594 A.2d 1089, 1092 (Me. 1991); *Ginn v. Penobscot Co.*, 334 A.2d 874, 878 (Me. 1975). When a negligence plaintiff seeks to use the doctrine, the Court functions as a gatekeeper and must determine whether the jury could reasonably determine that all elements of the doctrine have been satisfied—if the plaintiff produces sufficient evidence to pass this test, the Court will instruct the jury on the doctrine and the jury will then determine whether to draw the inference. *Poulin*, 567 A.2d at 927 (the trial court may decide only "whether a jury could rationally . . . conclude . . . that the [res ipsa elements] apply"); Restatement (Second) of Torts § 328D(2)-(3) (1965) ("[i]t is the function of the court to determine whether the inference may reasonably be drawn by the jury. . .[i]t is the function of the jury to determine whether the inference is to be drawn. . .") Of the elements listed above, the Law Court has pointedly emphasized that negligence plaintiffs must produce evidence showing that the injury causing event was unlikely to occur absent negligence to demonstrate the doctrine's applicability. *See e.g. Wellington Assocs.*, 594 A.2d 1089, 1092 (Me. 1991); *Pratt v. Freese's Inc.*, 438 A.2d 901, 904 (Me. 1981). Accordingly, if facts in the record suggest that reasonable explanations for the accident other than the defendant's negligence exist, the doctrine does not apply. *Ricci v. Alt. Energy, Inc.*, 211 F.3d 157, 161 (1st Cir. 2000); *Varano v. Jabar*, 197 F.3d 1, 5-6 (1st Cir. 1999); *Wellington Assocs.*, 594 A.2d at 1092; *Pratt*, 438 A.2d at 904.

If the plaintiff produces sufficient evidence for the Court to give a res ipsa instruction to the jury and the jury determines that the doctrine applies and then decides to draw the res ipsa inference, "the burden of proof shifts to the defendant who must demonstrate the absence of negligence." *Wellington Assocs.*, 594 A.2d at 1092. However, the defendant can rebut the res ipsa inference by "showing how the accident actually happened, and that it was not the defendant's fault, or by showing that the defendant had done his full duty to guard against it." *Stodder v. Coca-Cola Bottling Plants, Inc.*, 142 Me. 139, 142, 48 A.2d 622, 624 (1946). Accordingly, on a motion for summary judgment, if the plaintiff succeeds in demonstrating that a jury could reasonably determine that the elements of the doctrine have been met and the defendant has not presented evidence conclusively demonstrating the absence of negligence, summary judgment is inappropriate because the jury could potentially infer negligence under the doctrine. *See Pepin v. Wal-Mart Stores, Inc.*, No. 07-CV-33-P-S, 542 F. Supp. 2d 107, 113 (D. Me. April 1, 2008).

Although Plaintiff has largely based his motion for summary judgment on the applicability of the doctrine, he has made little effort to produce the evidence necessary to sustain his burden on the issue. Plaintiff's showing as to the third and fourth elements—that the "accident would not have happened absent negligence on the part of the defendant" and that "other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence"—is particularly lacking. To allow a jury to reasonably determine that these elements have been established in the circumstances of this case, Plaintiff would need to produce evidence showing that the Lull he and defendant were using was functioning normally without any mechanical defects on the day of incident. Plaintiff would need to produce evidence showing that a Lull of this kind is not prone to tip overs when operated with ordinary care. Plaintiff would also need to produce evidence that could sufficiently eliminate the possibility that the Plaintiff's positioning of the Lull before Defendant took control of the lifting platform and the possibility that Plaintiff's directions to Defendant as to where to move the platform played a role in the accident. However, he has not produced any of this evidence

15

here. Based on the facts in the summary judgment record, a jury could not reasonably conclude that reasonable alternative explanations for the accident have been sufficiently eliminated by the evidence. Accordingly, the Court concludes that Plaintiff has not met his burden of proof on this issue and thus, cannot rely on res ipsa loquitur on these cross-motions for summary judgment.

### E. Duty, Breach, Injury, Causation

Defendant contends that he is entitled to summary judgment as a matter of law because "the record is devoid of non-speculative evidence that Defendant's actions or inactions breached a duty of care – or even what that duty of care entailed – and/or caused the Lull to tip over." (Def.'s Mot. Summ. J. 6-8, 10-11.) In turn, Plaintiff argues that he has not only presented sufficient evidence to sustain a prima facie case but has presented enough evidence to conclusively establish that Defendant is negligent as a matter of law, even without the benefit of a favorable res ipsa inference. (Pl.'s Cross Mot. Summ. J. 6-10; Pl.'s Reply to Def.'s Opp. 1-4.)

Only the breach and causation elements are legitimately at issue here. It cannot be seriously argued that Defendant did not have a duty of care to Plaintiff when he was controlling the position of the Lull's platform during the home improvement project. Having rejected Defendant's argument that expert evidence is necessary to establish the appropriate standard of care, the Defendant's duty to Plaintiff while he was operating the Lull was to "conform to the legal standard of reasonable conduct in the light of the apparent risk." *Id.* Here, that duty would involve operating the Lull as a reasonable person of ordinary prudence would when using a piece of heavy construction equipment in similar circumstances. It is also undisputed that Plaintiff suffered an injury when the Lull tipped over with him in the platform. This leaves breach and causation as the only elements that require serious discussion.

The parties' briefs exchange spirited arguments regarding several negligence cases on these two issues. The Court will discuss two of those cases, *Addy v. Jenkins Inc.*, 2009 ME 46, 969 A.2d 935

16

and *Reid v. Town of Mt. Vernon*, 2007 ME 125, 932 A.2d 539, here because of their particular thematic similarities to the matters at issue in this case.

The *Jenkins* case concerned a subcontractor who fell while he was working at a construction site for the defendant contractor. The subcontractor was hired by the defendant to complete work on the exterior wall and roof of a building; the defendant had erected three stories of scaffolding for the subcontractor to use during the project. However, the defendant had not installed safety equipment such as rails, platforms, or ladders on the scaffolding and the scaffolding itself was not secured to the building. The first day the subcontractor worked on the building he fell while ascending the staging, which immediately prompted him to ask the defendant to install safety equipment. When the subcontractor was working on the building again four days later, he fell and sustained injuries. There were no eyewitnesses and the subcontractor testified at his deposition that he could not remember whether he fell from the scaffolding, the roof of a building adjacent to the one he was working on, or a ladder leading to the roof of that adjacent building. Based on this record, the Superior Court granted summary judgment to the defendant, concluding that the subcontractor had failed to produce sufficient evidence that the defendant's failure to install the safety equipment was a breach of duty and that the defendant's breach was the cause of his fall.

In its appellate opinion affirming the judgment, the Law Court concluded that the subcontractor had provided sufficient evidence for a jury to reasonably conclude that the defendant had breached its duty of care (that the subcontractor had fallen from the defendant's scaffolding) but "failed to present sufficient evidence to establish a prima facie case that [the defendant's] breach was the proximate cause of [his] injuries" and therefore, affirmed summary judgment for the defendant. *Addy*, 2009 ME 46, ¶¶ 1, 14, 969 A.2d 935. To support its conclusion, the Law Court noted specifically that the subcontractor "does not recall whether his fall was connected in any way to the absence of a ladder, platform, or railing on the staging, which are those very facts on which he relies to establish [defendant's] breach of its duty of care." *Id.* ¶ 11. The court then emphasized that to recover on a

17

negligence claim, the plaintiff "must show some reasonable connection between the act or omission of [the defendant] and the damage which [the plaintiff] has suffered" and that "when the matter remains one of pure speculation or conjecture, or even if the possibilities are evenly balanced, a defendant is entitled to a judgment." *Id.* ¶ 12. Based on this principle, the court reasoned that the subcontractor "presented evidence of only from where he fell, rather than how he fell" and therefore, "any finding that [his] fall was caused by a defect in the staging would be based on speculation or conjecture." *Id.* ¶¶ 14-15.

*Reid v. Town of Mt. Vernon* concerned a wrongful death action brought by a widower against the decedent's brother, the Town, and a waste management company. The decedent and his brother drove a pickup truck to a waste transfer site that the waste management company operated for the Town. The decedent and the brother intended to dispose of a television at the site. The site had a number of trash dumpsters that were "almost flush" with the ground. *Reid*, 2007 ME 125, ¶ 4, 932 A.2d 539. There were no safety chains or other devices in front of the dumpster. The decedent and his brother intended to back the truck up to the dumpster so that they could push the television out the back of the pickup truck. The brother, guided by the decedent, backed the truck up towards a dumpster until the decedent signaled him to stop. The brother then turned off the truck and exited the vehicle; as he was exiting, he heard two thumps from the rear of the truck. When he went to investigate, he saw his brother lying at the bottom of the dumpster and observed that the tailgate of the truck had fallen down. No one had witnessed the decedent falling into the dumpster. The record also included the brother's testimony that he knew of the danger in backing up his truck to the dumpster.

The Superior Court granted summary judgment in favor of the brother and the Law Court affirmed on appeal, holding that the widower had "failed to present us with a prima facie case, supported by her statement of material facts, as to how [decedent's] fall occurred and how [his brother] violated any duty in a manner that caused [decedent's] fall." *Id.* ¶ 19. In reaching this conclusion, the

Law Court emphasized that the decedent "could have placed himself in a precarious position behind the truck, he could have accidentally let down the tailgate, [his brother] could have backed up too close, or the tailgate could have fallen down by itself, knocking [decedent] into the dumpster." *Id.* In light of those possibilities, the court reasoned that "whether the facts presented show that any duty was violated when [decedent's] accident occurred is no better than speculation." *Id.*

The facts in the summary judgment record in this case, when read in the light most favorable to the plaintiff, are minimally sufficient to sustain a prima facie case as to the breach and causation elements. To sustain his burden of proof on these elements Plaintiff has presented portions of his deposition testimony and affidavit, Defendant's deposition testimony, an affidavit from the Lull's owner, and various pictures of the Lull and the incident site. The facts in the record drawn from these sources indicate the following: On the second day of the home improvement project, Plaintiff drove the Lull to Defendant's house and parked it at a spot he deemed suitable for them to use the Lull to paint the house. Plaintiff then occupied the Lull's platform to paint and Defendant occupied the cab to maneuver the platform. Eventually, it came time to paint under the eaves of Defendant's house. Plaintiff called to Defendant to move the platform higher and slightly forward, intending to tell him to stop moving the platform when it reached his desired location. Defendant moved the platform forward until Plaintiff told him to stop. Plaintiff then turned back towards the house and according to his testimony, instead of observing the platform rise Plaintiff felt the platform "tweak sideways" and the Lull tipped over with Plaintiff inside. Plaintiff asserts based on his sensation and knowledge of the Lull's operation that Defendant touched the lever that controlled the platform's tilt instead of the lever that controlled the platform's vertical and horizontal movement and that this error caused an imbalance resulting in the Lull tipping over.

On the issue of breach, a jury could reasonably credit Plaintiff's testimony regarding his sensation and statements regarding the Lull's operation and find that Defendant tilted the platform to the side when the platform was raised near the roof of the house and that this movement was

19

somewhat sharp and sudden. The question of whether tilting the platform to the side in that manner in the circumstances indicated by the record—was something that a reasonable person exercising ordinary prudence would not have done is a question that must be resolved by the trier of fact. Although the Court would agree that Plaintiff's showing on this issue may ultimately be deemed unpersuasive, it is minimally sufficient to allow a reasonable jury to determine the issue in favor of Plaintiff without relying on speculation. *See generally Searles*, 1997 ME 128, ¶ 6, 695 A.2d 1206 ("the invocation of summary judgment procedure does not permit the court to decide an issue of fact, but only to determine whether a genuine dispute of fact exists. The court cannot decide an issue of fact no matter how improbable seem the opposing party's chances of prevailing at trial").

To meet his burden of proof as to causation, Plaintiff must produce "proof that there is some reasonable causal connection demonstrated in the record between the act or omission of the defendant and the damage that the plaintiff has suffered." *Estate of Smith*, 2013 ME 13, ¶ 17, 60 A.3d 759. "Causation need not be proved directly but may be inferred if the inference flows logically from the facts and is not unduly speculative." *Estate of Smith v. Salvesen*, 2016 ME 100, ¶ 21, 143 A.3d 780. "If, however, there is so little evidence tending to show that the defendant's acts or omissions were the proximate cause of the plaintiff's injuries that the jury would have engage in conjecture or speculation in order to return a verdict for the plaintiff, then the defendant is entitled to summary judgment." *Id.* In *Addy*, the Law Court concluded that the evidence was sufficient to support an inference that the defendant contractor breached his duty by constructing defective scaffolding and that the plaintiff subcontractor fell from the scaffolding but was insufficient to support an inference that the breach caused the subcontractor's injury because the subcontractor had "presented evidence of only from where he fell, rather than how he fell." *Addy*, 2009 ME 46, ¶¶ 10-15, 969 A.2d 935.

Plaintiff's evidence in this case is stronger than the plaintiff's showing in *Addy*. When read in the light most favorable to the plaintiff, the facts in the record indicate that just before Plaintiff fell, the Defendant, who was operating the Lull, moved a lever that caused the platform to suddenly tilt to one

20

side while it was in an elevated position near the roof of the house. (As stated earlier, whether this aspect of Defendant's operation constitutes a breach of his duty of care is a question of fact to be determined by the jury.) Facts in the record further indicate that immediately after the platform suddenly tilted, the Lull tipped over while Plaintiff was on the platform, resulting in his injury. If the jury were to determine that Defendant had negligently operated the Lull by tilting the platform, it could rely on Plaintiff's testimony to further infer, based on the sequence of events and attendant circumstances, that Defendant's tilting of the platform has a reasonable connection to the Lull falling over and was more likely than not the cause of Plaintiff's resulting injury. While the Court agrees that Plaintiff's case would be far more persuasive if it were bolstered by favorable expert opinion testimony and other evidence, Plaintiff's showing on this issue does not need to be persuasive at this stage, it merely needs to be supported by sufficient evidence to allow a jury to reasonably find the issue in his favor without relying on speculation or conjecture. Plaintiff's testimony is sufficient to meet that minimal threshold here.

In sum, the Court concludes that Plaintiff has produced sufficient evidence to show that Defendant owed a duty to Plaintiff when he was operating the Lull and produced sufficient evidence to generate genuine disputes of fact as to the breach, injury, and causation elements of his cause of action. Therefore, the Court denies Defendant's motion for summary judgment.

Plaintiff's motion for summary judgment fares no better. Plaintiff's argument is based largely on his contention that he has shown on this motion that res ipsa loquitur is applicable to his claim. However, as Plaintiff has failed both to show that the doctrine applies and that it functions in the manner he contends, his motion has essentially lost its teeth. His showing regarding Defendant's alleged negligence is not nearly sufficient to conclusively demonstrate each element of his claim such that he would be entitled to judgment as a matter of law if the case proceeded to trial. Accordingly, the Court denies Plaintiff's motion for summary judgment as well.

21

Entry:

   1. Plaintiff's Motion for Summary Judgment is DENIED.

   2. Defendant's Motion for Summary Judgment is DENIED.

8/17/21
Date

William Anderson, Justice
Maine Superior Court

22

# BANSC-CV-2019-00129

## DAVID OGDEN VS JAMES ALEXANDER

Type Civil   Subtype  Property Negligence

Group By  **Connection Type** ▼

☐ Related Parties View

Active Parties/Participants ▼

| Party & Attorney Information | | Add Attorney    Add Group Associate |
|---|---|---|
| Plaintiff | OGDEN, DAVID | ★Douglas, Martica |
| Defendant | ALEXANDER, JAMES | ★Druary, J William, Jr. |